PATRICK D. ROBBINS (CABN 152288)
Acting United States Attorney
PAMELA T. JOHANN (CABN 145558)
Chief, Civil Division
JEVECHIUS D. BERNARDONI (CABN 281892)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7224
    Facsimile: (415) 436-6748
    jevechius.bernardoni@usdoj.gov

Attorneys for Federal Defendant

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| US RIGHT TO KNOW, a California Non-Profit Corporation,<br><br>Plaintiff,<br><br>v.<br><br>NATIONAL INSTITUTES OF HEALTH,<br><br>Defendant. | Case No. 4:23-cv-2954-KAW<br><br>**FURTHER CASE MANAGEMENT STATEMENT**<br><br>Date: March 18, 2025<br>Time: 1:30 p.m.<br>Dept: Oakland Courthouse<br>Judge: Hon. Kandis A. Westmore |

Plaintiff, US Right to Know ("Plaintiff" or "USRTK") and defendant, National Institutes of Health ("Defendant" or "the agency"), jointly submit this Further Case Management Statement.

**Joint Status Report**

The parties have been working in an attempt to resolve this case without judicial intervention, and as a result of those efforts, Defendant originally identified 6,475 pages of potentially responsive records, and it has been processing those records at a minimum rate of 200 pages each month. The agency is currently on track to complete processing of the originally identified records by the agreed-upon June 30, 2025 date (ECF No. 24).

Separate from this FOIA lawsuit, the agency has been involved in a parallel effort to recover certain agency records that Dr. Morens, a former employee of the agency, sent from his personal gmail

account. As a result of those efforts, Defendant represents that Dr. Morens' personal attorney recently released to the agency approximately 65,000 pages of Dr. Morens' gmails in single file pdf format, without associated metadata. At least some of the documents recovered from Dr. Morens are potentially responsive to Plaintiff's FOIA Requests. Acting in good faith, NIH proactively sought to provide Plaintiff with any records in the new collection responsive to the FOIA Requests at issue in the above-captioned case. With that goal in mind, the agency processed those pdfs with word recognition software and ran the search terms that it had used for the originally identified records against the Dr. Morens' gmails, which resulted in a dataset of approximately 43,000 pages. The agency does not currently know (1) how many of those pages constitute agency records or (2) how many of those pages are responsive to the FOIA Requests at issue.

Notwithstanding negotiations between the parties about how to proceed with respect to the Dr. Morens' gmails, the parties are currently at an impasse regarding two issues: (1) whether additional search terms should be applied to narrow the scope of potentially responsive records and (2) the rate at which the agency will process those records. Those issues are discussed in more depth, *infra* Section 15.

**Content Required By Standing Order For All Judges Of The Northern District of California:**

**Contents of Joint Case Management Statement**

**1.      Jurisdiction and Service**

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B). Defendant answered the complaint. ECF No. 16. No issues exist regarding personal jurisdiction, service, or venue.

**2.      Facts**

USRTK submitted FOIA requests to Defendant on November 5, 2021 ("Request One") and on January 21, 2022 ("Request Two") (collectively, the "Requests"). The Complaint includes three causes of action under the FOIA: failure to produce non-exempt responsive records; failure to provide timely final determination, and a failure to provide an updated and accurate estimated completion date. Since initiation of this case, USRTK has conferred with Defendant about the interpretation and search for records responsive to the Requests and an appropriate production schedule. The Court adopted the parties' production schedule as an order of the Court, ECF No. 24, which requires the NIH to complete processing

of the approximately 6,475 pages of potentially responsive records identified as of the date of the stipulation by June 30, 2025. USRTK restates its intent to work as cooperatively as possible with Defendant to avoid unnecessary litigation, including over records that Defendant asserts are not subject to disclosure by virtue of one or more of the FOIA's exemptions.

Defendant disputes that there are any unlawful withholdings at issue but joins in USRTK's intent to work cooperatively with USRTK to resolve any disputes in this matter.

**3.   Legal Issues**

USRTK submits that the following legal issues are presently involved in this lawsuit:

   i.   Whether Defendant issued timely and lawful final determinations on the Requests;

   ii.  Whether Defendant failed to provide updated estimated completion dates on the Requests;

   iii. Whether Defendant has produced all responsive, non-exempt records responsive to the Requests following a reasonably adequate search;

   iv.  Whether Defendant's withholdings under any claimed FOIA disclosure exemption are lawful and factually supported;

   v.   Whether USRTK is entitled to its attorneys' fees and costs.

Defendant submits that additional legal issues may include whether any of the affirmative defenses in Defendant's answer (ECF No. 16) bar any of USRTK's legal claims.

**4.   Motions**

There are no prior motions. If the parties are not able to resolve the case cooperatively, the parties anticipate that the case will be resolved through cross-motions for summary judgment.

**5.   Amendment of Pleadings**

No party anticipates amending its pleadings at this time.

**6.   Evidence Preservation**

The parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines") and have met and conferred pursuant to Federal Rule of Civil Procedure 26(f) regarding preservation of evidence in this action.

## 7. Disclosures

The parties agree and stipulate pursuant to Federal Rule of Civil Procedure 26(a)(1)(A) that initial disclosures are not necessary, as this is a FOIA action for which there is no need to exchange such disclosures.

## 8. Discovery

To date, no discovery has been taken by any party. The parties note that discovery is generally not appropriate in FOIA actions. *See Lane v. Dep't of Interior*, 523 F.3d 1128, 1134 (9th Cir. 2008). However, USRTK hereby reserves its right to seek discovery concerning the timing and locations where Defendant searched for and processed records responsive to the Requests. This specifically includes whether Defendant conducted a reasonably adequate search of Dr. Morens' gmail account and related devices for agency records. In response, Defendant states that discovery is generally unavailable in FOIA actions, and that FOIA discovery is limited because the underlying FOIA case revolves around the propriety of revealing certain documents.

## 9. Class Actions

This case is not a class action.

## 10. Related Cases

There are no related cases pending before this Court as defined by Local Rule 3-12.

## 11. Relief

USRTK seeks the production of all non-exempt records responsive to USRTK's Requests; that all disclosure exemptions are lawfully applied and factually supported; declaratory relief on USRTK's claims concerning the failure to issue a final determination and failure to provide an updated estimated completion date; and an award of attorneys' fees and costs under 5 U.S.C. section 552(a)(4)(E).

Defendant denies that Plaintiff is entitled to any relief.

## 12. Settlement and ADR

The parties have conferred about ADR processes and believe that ADR is premature at this time. The parties are continuing to communicate and are working to narrow the issues that may be presented at either a settlement conference or ADR process.

13. **Other References**

None applicable.

14. **Narrowing of Issues**

None applicable.

15. **Scheduling**

The parties have met and conferred on multiple occasions but have not been able to agree on a processing schedule for the Dr. Morens' gmails. The parties have included their respective positions below for the Court's consideration.

**Plaintiff's Position**:

This case presents the Court with one of the central frustrations under the FOIA: how fast should the government provide records to a FOIA plaintiff? The statute says production of responsive records must occur "promptly." 5 U.S.C. § 552(a)(3)(A). Courts in this District interpret "promptly" to mean "within days or a few weeks of a determination, not months or years." *Sierra Club v. United States Env't Prot. Agency*, No. 18-CV-03472-EDL, 2018 WL 10419238, at *5 (N.D. Cal. Dec. 26, 2018) (citing *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013)). The FOIA requires records to be produced "promptly" because the "value of information is partly a function of time." *Fiduccia v. U.S. Dep't of Justice*, 185 F.3d 1035, 1041 (9th Cir. 1999). Time may be an even more important factor when documents have "a particular value that will be lost if not disseminated quickly…[o]rdinarily this means a breaking news story of general public interest." *Sierra Club*, 2018 WL 10419238, at *5 (quoting *Am. Civil Liberties Union of N. California v. U.S. Dep't of Def.*, No. C 06-01698 WHA, 2006 WL 1469418, at *5 (N.D. Cal. May 25, 2006)). This is particularly true here, in a case dealing with the origins of COVID-19, with a high-ranking government employee (Dr. Morens) intentionally using his private email account to ensure records are outside the FOIA's reach. Public reporting on this situation shows NIH employees would intentionally misspell words to avoid keyword searches for responsive records, among other attempts to shield their communications from public scrutiny.[1]

---

[1] *See, e.g.,* "Health Officials Tried to Evade Public Records Laws, Lawmakers Say," The New

USRTK filed this case on November 9, 2023. ECF No. 1. Defendant represents there are approximately 43,000 pages of documents that may be responsive to the FOIA Requests at issue in this case. Defendant proposes that it process and provide these documents to USRTK at a rate of 300 pages/month. If the Court were to adopt that schedule, this case would remain on the docket in *just* the production phase for another 143 months, <u>or just under twelve years</u>. This proposal plainly violates the FOIA's requirement that records be made promptly available to the public.

USRTK stands ready to confer with NIH about potential narrowing. The problem is the information deficit between the parties, as USRTK has expressed. Plaintiff has no idea what keywords are returning specific numbers of "hits," and the random sampling provided by NIH contained records that USRTK considers responsive to the FOIA Requests. NIH complains that the records it received from Dr. Morens' personal attorney were stripped of metadata but makes no efforts to describe any further negotiations with that attorney; indeed, it is generally not acceptable to strip all metadata from ESI when responding to subpoenas or other lawful requests for discovery. NIH also proposed narrowing by using two keywords, "covid" and "origin," but USRTK has reasonable concerns that such narrowing will exclude responsive records, based on (1) the random sampling provided by NIH using the original search parameters, and (2) the aforementioned public reporting that those terms may be intentionally manipulated to avoid keyword searches.

Defendant now claims that it does not have the requisite staffing to meet its FOIA demands.[2] Here, the government finds no safe harbor. First, the FOIA allows the government to seek an elongated production schedule where "exceptional circumstances" exist. 5 U.S.C. § 552(a)(6)(C)(i). Those "exceptional circumstances" statutorily exclude "predictable agency workload of requests" under the FOIA. *Id*. (ii). This case has been on the Court's docket since 2023, yet this is the first time Defendant has claimed that it lacks resources to comply with the law; at no time in the processing of the Requests did Defendant invoke the FOIA's "unusual circumstances" or "exceptional circumstances" provisions.

Second, courts have repeatedly held that an agency's "limited resources do not relieve it of its

---

York Times, May 28, 2024, available at <*https://www.nytimes.com/2024/05/28/health/nih-officials-foia-hidden-emails-covid.html*>.

[2] USRTK reserves its right to seek discovery on this issue in the future, if necessary.

statutory obligation to promptly provide requested documents." *Sierra Club*, 2018 WL 10419238, at *6 (citing *Fiduccia*, 185 F.3d at 1041). As the Ninth Circuit recognizes, compliance with the FOIA may require agencies to "divert staff from programs they think more valuable to Freedom of Information Act compliance" and raise other political and practical concerns, but federal agencies should address those concerns to Congress, rather than the courts. *Fiduccia*, 185 F.3d at 1041; *see also Our Children's Earth Found. v. Nat'l Marine Fisheries Serv.*, 85 F. Supp. 3d 1074, 1090 (N.D. Cal. 2015) ("Although the Court and many others have recognized that agencies' resources are heavily taxed by the quantity and depth of FOIA requests, that does not grant the agency carte blanche to repeatedly violate congressionally mandated deadlines."). At bottom, it is incumbent upon NIH to request from Congress the resources it needs to comply with the requirements of the FOIA, not stand behind a lack of resources as a shield.[3] Such a position would thwart the entire reason we have the statute in the first place: "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).

USRTK respectfully requests the Court order NIH to review, process, and produce these records in a manner that will comply with the FOIA's "prompt" production mandate. USRTK proposed a 6- to 9-month schedule to NIH, which was rejected by Defendant. As a matter of compromise, USRTK asks the Court to impose a production schedule with a date certain of March 18, 2026, one year from the date of the upcoming CMC.

**Defendant's Position**:

Dr. Morens' personal attorney recently provided a set of approximately 65,000 pages of Dr. Morens' gmails to the agency as individual pdf files.[4] When emails are printed to pdf, that process strips all the metadata out of the email that allows software packages to identify duplicate pages and de-duplicate documents and impose limitations on searches (*e.g.*, via timeframe, sender, recipient, etc.). The

---

[3] NIH asks the Court to approve a 300 pages/month processing rate based on a different USRTK case, *USRTK v. NIH*, 1:24-cv-0285-JEB (D.D.C.). A review of the docket and the parties' last status report shows that the universe of responsive records total only 2,054 pages. ECF No. 16. That results in a production timeframe of roughly 6-7 months, less than what USRTK proposes herein.

[4] If necessary, the agency can provide a declaration supporting the facts in this section.

agency's software is able to conduct an optical character recognition ("OCR") search. An OCR search is a process that converts an image of text, as present in pdfs, into a machine-readable text format when files are imported into that software. However, without the original metadata, the agency is limited to using keyword searches. The agency ran the original keyword search, using the term "EcoHealth*" (a search term that is *broader* than the search terms listed in Plaintiff's FOIA Requests in this case), against the set of 65,000 pages of gmails received from Dr. Morens' personal attorney, which resulted in a dataset of approximately 43,000 pages of documents that are potentially responsive to Plaintiff's FOIA Requests.

The agency has attempted to work with Plaintiff to narrow the scope of documents to process and avoid processing unnecessary material. In response to Plaintiff's request for a random sampling of records, the agency provided Plaintiff a random sampling of 80 pages using terms from Plaintiff's original, broad request that sought "[a]ll email correspondence to or from Dr. Morens (including CC, BCC and attachments) with the following email domains and organizations: @ecohealthalliance.org and EcoHealth Alliance." The agency also suggested potential keyword search modifications of "origin" and "covid"; those suggested modifications would reduce the potential count to 14,000 pages. Plaintiff declined these modifications and declined to offer additional keywords.[5] Instead, Plaintiff simply offered to exclude "otherwise public information." Exclusion of "otherwise public information" is not something that can be done in an automated fashion and will have to occur as part of a review of the records in a page-by-page fashion; in other words, it would not result in any processing time savings.

Under current operating conditions, the agency reports that it is able to process the Dr. Morens' gmails at a rate of 300 pages per month. The agency aims to release records as expeditiously as possible; however, committing to any increase in monthly processing is not feasible at this time in light of the agency's other FOIA obligations and staffing shortages. *See, e.g.*, *U.S. Right to Know v. NIH*, No. 24cv2785 (D.D.C. Mar. 7, 2025) (ordering NIH to process 300 pages per month after reviewing the

---

[5] Plaintiff suggests that other NIH employees intentionally misspelled words to avoid FOIA disclosures, but there is no indication that any such complication is at issue in the records at issue in this case. Indeed, Plaintiff has been receiving records responsive to Plaintiff's FOIA Requests for over a year, and Plaintiff points to no evidence from the agency's releases to suggest additional keyword searches would exclude responsive records here. In any event, that purported issue at the agency has been the subject of multiple FOIA requests, and the agency's investigation and responses to those FOIA requests demonstrates that this was a very limited issue, returning a total of three pages of records with misspelled words.

JOINT FURTHER CASE MANAGEMENT STATEMENT
4:23-cv-2954-KAW                                                8

parties' respective positions on processing rate). Like many other agencies within the Department of Health and Human Services, Defendant has a backlog of FOIA requests that it must also process, as well as a number of cases in litigation. The agency's current backlog includes 1,167 FOIA requests in the queue for processing, and 65 active litigations. Plaintiff alone has three active FOIA litigations with the agency as well as 38 open FOIA requests. At its present staffing capacity—which continues to diminish in the current environment without the ability to backfill—the agency is unable to process records for Plaintiff (or any particular requester) at a higher rate without adversely impacting the needs of other requestors by redirecting significant resources away from the processing of other FOIA requests. Importantly, a higher processing rate would expose the agency to the risk of failing to meet concurrent court-imposed production deadlines in other FOIA lawsuits.

Plaintiff seeks to have the agency complete processing and release of non-exempt portions of Dr. Morens' gmails within 6-9 months. This proposal would add approximately 7,100 to 4,700 additional pages per month to the agency's current litigation workload (*i.e.*, at least a 1,300% increase in the rate that USRTK previously agreed to, *see* ECF No. 23) and is simply not feasible given current resources. The agency has five staff members assigned to process litigations and one staff member assigned to manage the agency's entire litigation workload. Current staff members assigned to process litigations are each handling approximately 1,600 pages of records each month. These staff members also are tasked with processing FOIA requests not in litigation. Due to the addition of 10 litigations pending processing, this number will increase to 2,200 pages in the near future, excluding the processing needs for the additional tranche of documents presently at issue in the above-captioned matter. The agency anticipates further workload strain with anticipated reductions in staffing. Pursuant to ongoing initiatives to reduce staffing across the federal government, the agency is projected to reduce total FOIA staffing by more than 40 percent within the next two months. Additionally, cross-government cost-saving directives will require the FOIA program to reduce its IT investments going into FY26 and seek to preclude agency investments into additional software solutions.[6]

---

[6] Plaintiff has suggested that the agency could retain a vendor to process these materials given the lack of metadata in the record set provided to the agency. However, the agency is not authorized to enter into new contracts at this point in time, and even if it were able to do so, an outside vendor would face the same problems as the agency's processing software.

The agency has established a processing rate of 300 pages per month in order to capitalize on its workflow and ensure that more pages for more FOIA requests are processed per month. This allows for fair and equitable processing of all FOIA requests submitted to the agency. Implementing an extreme page review requirement as requested by Plaintiff in this litigation would result in a diverting of resources from the office in responding to myriad other FOIA requests and other litigations, including Plaintiff's other FOIA matters. This would create even more delays in processing other requests, create an even greater bottleneck of requests, and likely result in other litigations being filed against the already overburdened agency. Any large processing requirement, even one not as large as that requested by Plaintiff, would stress the agency's FOIA office's operations and create serious consequences for other requesters. It bears repeating that (1) the new record set was not in the possession of the agency until recently, (2) the agency actively sought to recapture those documents from Dr. Morens and his personal attorney, and (3) once the agency recovered those documents, the agency approached Plaintiff about including any responsive, non-exempt records in the scope of this case.

### 16. Trial

The parties anticipate that this action will involve purely legal issues and will be resolved by motion without the need for a trial.

### 17. Disclosure of Non-Party Interested Entities or Persons

As a governmental entity or agency, Defendant is exempt from the disclosure requirement of Civil Local Rule 3-15. Plaintiff timely filed its "Corporate Disclosure Statement" (ECF No. 2) and represents that it is unaware of any non-party interested entities or persons.

### 18. Professional Conduct

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

### 19. Other matters as may facilitate the just speedy and inexpensive disposition of this matter

None applicable.

DATED: March 13, 2025                                          Respectfully submitted,

|   |   |
|---|---|
|   | PATRICK D. ROBBINS<br>Acting United States Attorney |
|   | */s/ Jevechius D. Bernardoni\**<br>JEVECHIUS D. BERNARDONI<br>Assistant United States Attorney |
|   | Attorneys for Federal Defendant |
| DATED:  March 13, 2025 | */s/ Daniel C. Snyder*<br>DANIEL C. SNYDER<br>PUBLIC JUSTICE |
| DATED:  March 13, 2025 | */s/ Richard A. Brody*<br>RICHARD A. BRODY<br>Greenfire Law, PC |
|   | Attorneys for Plaintiff<br>US RIGHT TO KNOW |

*In compliance with Civil Local Rule 5-1(i)(3), the filer of this document attests under penalty of perjury that all signatories have concurred in the filing of this document.*