UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| US RIGHT TO KNOW<br><br>    Plaintiff,<br><br>v.<br><br>NATIONAL INSTITUTES OF HEALTH<br><br>    Defendant. | Case No. 23-cv-02954 |

**DECLARATION OF GORKA GARCIA-MALENE**

I, Gorka Garcia-Malene, declare that the following enumerated statements are true and correct to the best of my knowledge:

1.      I am the Freedom of Information ("FOIA") Officer for the National Institutes of Health ("NIH"), U.S. Department of Health and Human Services ("HHS" or the "Department"). I have held this position since October 15, 2017.

2.      As the NIH FOIA Officer, I am responsible for supervising and directing the day-to-day activities of the NIH FOIA Office (hereinafter, "NIH-FOIA"), the central office responsible for responding to FOIA requests for records from all operating divisions of the NIH. In my position, I determine whether to release or withhold records, or portions of records, in accordance with the FOIA and the HHS implementing regulations. I also coordinate efforts, as necessary, when one or more of the NIH Centers/Institutes/Offices is involved in responding to a FOIA request.

1

3. The statements contained in this declaration are based upon my personal knowledge, upon information available to me in my official capacity as the NIH FOIA Officer, including information supplied to me by employees under my supervision or employees in other NIH offices, and upon conclusions I reached based on that knowledge or information.

4. The purpose of this declaration is to explain the processing of the FOIA requests at issue in the above-captioned litigation and support NIH's proposed processing schedule. Given NIH's substantial FOIA caseload and limited staffing, NIH is able to process the remaining pages at issue in this matter at a rate of 300 pages a month.

### NIH-FOIA's Standard Review Process

5. NIH is the nation's medical research agency, seeking to make discoveries that improve health and save lives. It is made up of 27 different components, each of which has its own research agenda.

6. Historically, FOIA operations at NIH are decentralized in that each of NIH's 27 different components have their own FOIA coordinators. Requesters are encouraged to send their requests to the NIH component with responsibility for the program to which the requested records relate. Upon receipt of a FOIA request, the NIH component to whom the request is directed is responsible for logging the request into the NIH-wide FOIA Tracking System and coordinating the search for and processing of responsive records for subsequent release.

7. The FOIA coordinators at NIH's various components report to me for purposes of FOIA request management and processing.

8. When responding to a FOIA request, the NIH-FOIA staff conducts a page-by-page, line-by-line review of all potentially responsive records to determine whether the document is responsive to the request, whether the information is publicly available, whether information

should be withheld under one or more of the nine exemptions to the FOIA, and whether the records contain equities of other federal agencies or third-party stakeholders. During the review process, FOIA coordinators will consult with HHS or NIH program offices, federal agencies, or any other stakeholders of the records involved, as appropriate.

## Receipt of Plaintiff's FOIA Requests

9. On November 5, 2021, NIH-FOIA received a two-part FOIA request from Plaintiff via email. Part One of this FOIA request sought "email correspondence to or from Dr. Stemmy, Dr. Michael Lauer, Jenny Greer, and Philip Smith" with "@ecohealthalliance.org OR "EcoHealth Alliance" and "@wh.iov.cn OR "Wuhan Institute of Virology." Part Two of this FOIA request sought "email correspondence to or from Dr. Stemmy" with seven named individuals or email addresses. The date range for this request was "11/1/2013 to 1/1/2018."

10. NIH-FOIA acknowledged this request on February 24, 2022, and assigned it the tracking number 57943. Our program typically receives FOIA requests via our electronic FOIA review platform. That platform accepts the requests, adds it to our queue and sends an acknowledgment response in an automated fashion. Because this request was submitted via email rather than our FOIA review platform and my team did not immediately see that email, acknowledgment of this request was processed manually after it was retrieved from our email systems. At that time, we entered the request according to our normal processes.

11. On January 21, 2022, NIH-FOIA received a second FOIA request from Plaintiff via email. This FOIA request sought "records of all email correspondence to or from Dr. Morens" with "@ecohealthalliance.org" and "EcoHealth Alliance." The date range for this request was from "1/1/2016 to the present."

12. NIH-FOIA acknowledged this request on January 31, 2022, and assigned it the tracking number 57707.

## Processing of Plaintiff's FOIA Requests

13. When NIH-FOIA receives a FOIA request, NIH endeavors to initiate the search as soon as possible. The search results remain in queue in the order in which they were received until assigned to an analyst for review.

14. NIH-FOIA initiated a search in response to Plaintiff's November 5, 2021 FOIA request (hereinafter "Stemmy et al. FOIA Request") on February 24, 2022. NIH received the results of the search on various dates, as different offices processed the search. The last response to our request for records was returned on August 26, 2022.

15. On January 21, 2022, the same day that NIH-FOIA received Plaintiff's second FOIA request (hereinafter "Morens FOIA Request"), NIH-FOIA ordered a search for potentially responsive records. On January 31, 2022, NIH-FOIA received the results of this search.

16. These requests then remained in our queue as the NIH FOIA processed records from earlier requests, including those of Plaintiff.

17. During the pendency of this litigation, NIH received notice that Dr. Morens forwarded emails he deemed work-related from his personal account to his NIH Outlook email account. When NIH-FOIA learned that those emails were available in Outlook, relevant searches were re-run on his work email account and potentially responsive pages resulting from those supplemental searches were added to the count of potentially responsive pages pending processing.

18. On August 3, 2023, we received notice of this litigation, filed June 15, 2023.

19. NIH-FOIA subsequently began discussions with Plaintiff regarding how the 6,475 pages of potentially responsive records would be processed. The parties reached an agreement that

NIH-FOIA would (1) prioritize processing of records identified to date from Dr. Morens' personal Gmail account, (2) process records at a rate of at least 200 pages per month, and (3) complete processing of the 6,475 pages by June 30, 2025.

20. Consistent with this agreement, NIH-FOIA has (1) prioritized processing records within the 6,475-page record set that originated from Dr. Morens' personal Gmail account, (2) reviewed 200 or more pages of records each month and issued monthly releases of all responsive, non-exempt material, to date, and (3) remains on track to complete all processing by June 30, 2025. Approximately 1,050 pages remain, consisting of pages that required consultation with other agencies.

### Newly Received Documents from Dr. Morens' Gmail Account

21. Separate from this lawsuit and any FOIA matter, NIH was involved in efforts to recover agency records that Dr. Morens, an employee of NIH at the time the referenced efforts were made, sent from his personal Gmail account. Those efforts resulted in the retrieval of certain Gmail records. These Gmail records were included in NIH-FOIA's search for potentially responsive records, resulting in the initial 6,475-page record set.

22. On or around July 17, 2024, NIH-FOIA received a set of 65,000 pages of documents in PDF format from NIAID leadership. NIH-FOIA was informed by NIAID leadership that these documents were obtained from Dr. Morens' personal attorney. At the time, Dr. Morens was still an NIH employee.

23. Immediately upon receipt, NIH-FOIA sought to notify Plaintiff of the existence of these documents and proceeded to voluntarily broaden the scope of its review by conducting a search using the parameters listed in the Morens FOIA Request, referenced in paragraph 7, across the newly received Morens collection.

24.     Specifically, NIH-FOIA conducted a keyword search using the search term "EcoHealth." This search resulted in approximately 43,000 pages of potentially responsive documents.

25.     Given the volume of pages resulting from the initial keyword search, NIH-FOIA has sought to confer with Plaintiff on narrowing and refining search terms to better tailor the request to target the specific material Plaintiff seeks.

26.     In an effort to engage in meaningful dialogue regarding narrowing, NIH-FOIA has offered constructive suggestions and invested considerable NIH-FOIA resources to conduct numerous searches. NIH-FOIA's attempts at negotiating a narrowing agreement include the following:

(1) Offered Plaintiff the opportunity to identify topics of interest to narrow the 43,000-page set;

(2) Based on context and our experience with Plaintiff's other FOIA requests, NIH suggested four sets of search terms, conducted keyword searches of the 43,000-page set using these search terms, and provided corresponding page counts, as follows:

   i. "origin" AND "covid": 14,000 pages.
   ii. "EcoHealth" AND "covid": 22,953 pages
   iii. "EcoHealth" AND "origin": 15,207 pages
   iv. "EcoHealth" AND ("covid" AND "origin"): 14,117 pages.

(3) Provided Plaintiff a random sampling of 80 pages from the 43,000-page set to help Plaintiff identify potential search terms; and

(4) Conducted 21 searches of the 43,000-page set using terms Plaintiff suggested and provided the following counts of items and pages resulting from those searches:

   i. DEFUSE: 117 items, 2990 pages

6

      ii. DARPA: 206 items, 4,339 pages
     iii. Private funding: 34 items, 1203 pages
     iv. Furin: 349 items, 15,312 pages
      v. ACE2: 291 items, 23,022 pages
     vi. Progenitor: 156 items, 7,202 pages
    vii. Union of Concerned Scientists: 108 items, 2,832 pages
   viii. Wuhan Institute of Virology: 1,131 items, 15,602 pages
     ix. WIV (all caps): 848 items, 12, 253 pages
      x. Restriction: 131 items, 19,661 pages
     xi. Bsal: 0 items
     xii. BsmBI: 9 items, 245 pages
   xiii. Database: 489 items, 27,047 pages
   xiv. Yunnan: 263 items, 7148 pages
    xv. Mojiang: 49 items, 844 pages
   xvi. Baric: 437 items, 12,399 pages
  xvii. biosafety: 716 items, 20,956 pages
 xviii. BSL: 348 items, 10,728 pages
   xix. Ben Hu: 14 items, 951 pages
   xx. gain of function: 944 items, 14,151 pages
   xxi. gain-of-function: 944 items, 14,151 pages

27. In total, NIH-FOIA has conducted 25 additional searches of the 43,000-page set. Despite these extensive efforts, Plaintiff has wholly rejected each and every narrowing proposal.

28. Plaintiff has raised issue with the form of these documents, seeking to obtain these documents in native format with metadata. However, it is standard practice in FOIA processing to provide records in PDF format, which would not include metadata. Additionally, NIH is unable to obtain a copy of these documents in native format.

29. While NIH retains control over the versions of these emails that have been integrated into NIH systems, it does not maintain control over emails within a personal Gmail account. Dr. Morens is no longer an NIH employee. While NIH may exercise leverage over its employees to cooperate with its requests, NIH lacks the authority to demand that a member of the public comply with a request to maintain emails and reproduce emails that have existed on a personal Gmail account.

7

30. Moreover, metadata would only prove useful for narrowing the scope of the search. However, despite NIH's extensive efforts to focus the search to Plaintiff's particular interests, Plaintiff has refused to narrow the scope of the request. Consequently, metadata is of no use in the context of this litigation.

31. NIH-FOIA has diligently complied with the standing agreement to process at least 200 pages per month. In a show of good faith, NIH-FOIA has offered to increase its monthly processing rate beyond the standing agreement, to process at least 300 pages per month.

### NIH-FOIA Workload

32. NIH-FOIA's processing rate of 300 pages per month capitalizes on its workflow and ensures that more pages for more requestors are processed each month. This allows for fair and equitable processing of all NIH FOIA requests. This is particularly true in light of the demands posed by the growing number, size, and complexity of FOIA requests received by NIH, and the constraints of reduced staffing. Implementing an extreme page review requirement, as requested by Plaintiff in this litigation, would result in a diverting of a disproportionate share of agency resources from responding to a myriad other FOIA requests, to a single FOIA requester.

33. During Fiscal Year (FY) 2024 alone, NIH received 1,758 new FOIA requests.[1] While gains in efficiencies allowed NIH-FOIA to process 1,688 requests, 1,007 remained pending at the end of the fiscal year. NIH currently has 1,313 pending FOIA requests in queue, 880 of which are backlogged requests from prior years.

34. In addition to the demands of processing new and backlogged FOIA requests, NIH has experienced a steady increase in litigations. Presently, NIH has 62 active litigations. Plaintiff

---

[1] *See* HHS Fiscal Year 2024 Freedom of Information Annual Report, *available at* https://www.hhs.gov/foia/reports/annual-reports/2024/index.html.

alone has four active litigations with NIH, requiring NIH-FOIA to process 1,000 pages each month solely for Plaintiff's FOIA requests in active litigation.

35. NIH-FOIA must also balance the demands of increased FOIA requests and litigations with the limitations of reduced staffing. Pursuant to ongoing initiatives to reduce staffing across the federal government, NIH is projected to cut total FOIA staffing by more than 40 percent within the next month.

36. As of June 2, 2025, the NIH FOIA Office of the Director – where FOIA litigations are processed, is anticipated to retain eight personnel. Of the remaining eight personnel, one staff member is responsible for administrative tasks and three staff members are assigned to process new FOIA requests, backlogged FOIA requests, and appeals. The litigation team is projected to be cut in half, with four staff remaining, one team lead managing FOIA litigations full time and three staff members balancing a workload of FOIA litigations, appeals, and non-litigation requests.

37. NIH is simply unable to process potentially responsive records at a rate greater than 300 pages per month. Any large page review requirement, even one not as large as that requested by Plaintiff, would stress NIH-FOIA operations, interfere with NIH's ability to meet agreed-upon and court-imposed deadlines in other FOIA litigations, create serious consequences for other requesters, and lead to further delays in processing requests, and other complications.

38. Accordingly, based on the foregoing, I aver that NIH cannot increase its processing rate for the remaining documents at issue in this litigation beyond 300 pages per month.

39. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury the foregoing to be true and correct, to the best of my knowledge, information, and belief.

Executed this 13th day of May 2025

GORKA GARCIA-MALENE